

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

FILED
MAR 24 2011
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>WILLIAM STOKES,<br><br>    Debtor.<br>_____<br><br>WILLIAM STOKES,<br><br>    Plaintiff,<br><br>v.<br><br>RECLAMATION DISTRICT 1001 and<br>DOES 1-10, inclusive,<br><br>    Defendants.<br>_____ | Case No. 10-48581-E-7<br><br><br><br><br><br><br>Adv. Pro. No. 11-02175-E |

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.

**MEMORANDUM OPINION AND DECISION**

The court has been presented with an "Emergency Request for Reinstatement of Stay or Alternative Remedy to Stay of (Unlawful Detainer)" filed the William Stokes, the plaintiff in this adversary proceeding. The court construes the document as an application for a temporary restraining order. The application was filed on March 23, 2011. The Debtor-Plaintiff did not file a notice of hearing or a proof of service with the application.

Case 11-02175    Filed 03/24/11    Doc 13

There is no evidence before the court that Debtor-Plaintiff has provided actual notice to the Reclamation, Bank of New York Mellon,[1] or the Sutter County Sheriff of this application. Notwithstanding any procedural or substantive deficiencies with respect to this Motion by the pro se plaintiff, the court will review the application as an *ex parte* application for a temporary restraining order.

In the application, Mr. Stokes (Debtor-Plaintiff) asserts that he has received multiple notices to vacate the real property commonly known as 204 Lee Road, Nicholas, California; one issued pursuant to a state-court unlawful detainer action involving Reclamation District 1001 and a second issued pursuant to a state-court unlawful detainer action involving The Bank of New York Mellon. The Reclamation District's notice to vacate requires possession to be turned over no later than 6:01 a.m. on March 25, 2011. The Bank of New York Mellon's notice to vacate required possession to be turned over no later than 6:01 a.m. on March 16, 2011. Debtor-Plaintiff remains in possession of the property.

Debtor-Plaintiff argues that since the property is subject to multiple claims, which clouds title, and he posted a $1,400.00 good-faith offering with the Superior Court of Sutter County to remain in the home, the court should issue an order preventing the enforcement of the Reclamation District's notice to vacate.

---

[1] The documents relating to Bank of New York Mellon are for a different state court unlawful detainer in a California Superior Court Action, Sutter County Case No. CVCM092912, naming Norris Dawson as defendant. Unnumbered Exhibit to Debtor-Plaintiff's Emergency Require for Reinstatement of Stay or Alternative Remedy to Stay of (Unlawful Detainer). Dckt. 8. The Writ of Possession is dated February 24, 2011 and identifies the Lee Road Property as being subject to the Writ.

Additionally, Debtor-Plaintiff seeks the court to stay the enforceability of its order granting relief from the automatic stay issued in the parent bankruptcy case pursuant to California Code of Civil Procedure § 918.[2]

In support of the application, Debtor-Plaintiff offers a declaration in which he testifies that he is insolvent and unable to pay any moving expenses until April 1, 2011. (Decl. of William Stokes ¶ 5, Dckt. 8.) Debtor-Plaintiff explains that his wife recently started a new job and has not yet been paid and that he will not receive any benefits from his pension until April 1, 2011. (*Id.*) Debtor-Plaintiff also testifies that he is currently searching for a new residence, but if he is evicted he will suffer a "severe hardship" as he has no other place to live. (*Id.* at ¶ 6-7.) Debtor-Plaintiff argues that he needs additional time to find a new residence because he has a fully-furnished, 4,900-square-foot home, which requires additional time to pack and move, "especially with the dangerous weather the state is currently encountering." (*Id.* at ¶ 7.)

Debtor-Plaintiff also testifies that he provided $1,400.00, the reasonable rental value of the home, to support a prior stay of enforcement of the notice to vacate. (*Id.* at ¶ 8.) It is unclear from Debtor-Plaintiff's papers if there was a stay issued by the state court. From the pleadings, it appears that no state court stay exists, and the Debtor-Plaintiff seeks a federal injunction (now that the stay in his bankruptcy case has been terminated) to

---

[2] No explanation is offered as to why a California procedural Code section is applicable to orders issued by a federal court.

3

prevent the enforcement of the state court order for possession of the premises.

## ALLEGATIONS IN THE COMPLAINT

The court has also reviewed the complaint in this adversary proceeding. (Dckt. 1.) The Complaint alleges numerous affirmative monetary claims against the Reclamation District. These include: "Real Party in Interest," the Reclamation District's lack of standing to foreclose, the medium of exchange was not authorized by the U.S. Constitution, that the Reclamation District is bankrupt and insolvent pursuant to an Act of Congress, violation of California service of process laws, fraud, that Federal Reserve Notes are worthless securities, and unfair trade practices (Cal. Bus. & Prof. Code § 17200 et. seq.).

Debtor-Plaintiff asserts that he is possession of the property pursuant to a "lease option to purchase agreement" with an entity listed on the "lease option" as being KTLA-SP4, LLC (Compl. 3:15-17, Exhibit A to Complaint.)[3] It is further alleged in the compliant that shortly after entering into the agreement with KTLA-SP4 (which is dated March 23, 2010), the Debtor-Plaintiff received a 30 Day Notice to Quit and a Notice to Vacate from Reclamation District 1001. Exhibits B-1 and B-2 to Complaint. The two Reclamation District Notices are dated May 26, 2010.

The Debtor-Plaintiff further alleges in the Complaint that there has been an unlawful detainer proceeding in state court in

---

[3] Though the lease agreement is attached as an exhibit to the Complaint (Ex. A, Dckt. 6), Debtor-Plaintiff fails to point to the specific provision which creates the option to purchase the real property. The court's independent review of the lease did not reveal a provision in the lease creating such a right for the Debtor-Plaintiff.

4

which a Notice to Vacate has been issued by the Sutter County Sheriff for the Lee Road Property. Exhibit B-3 to the Complaint. The unlawful detainer action stated on the Notice to Vacate is *Reclamation District 1001 v. William Stokes and Does 1-100*, California Superior Court, Sutter County case no. CVCM101657. Attached to this exhibit is a Writ of Possession in the state court action for possession of the Lee Road Property to be Delivered to the Reclamation District.

Debtor-Plaintiff asserts that there are multiple parties who are claiming the right to possession of the Lee Road Property and he should be allowed to remain in possession thereof.

The court further notes that while the Debtor-Plaintiff has brought this action in *pro se*, the Complaint asserts very detailed, and some esoteric, legal contentions. While in *pro se*, the Debtor-Plaintiff demonstrates a knowledge of legal issues and process.

The Complaint asserts that the Debtor-Plaintiff is in possession of the Lee Road Property pursuant to a lease option to "purchase agreement in allodial freehold of all that real property and improvements...." Complaint, pg. 3:15-17. He further asserts that the Reclamation District is a foreign *corpra ficta* not registered to do business in California is an unregistered foreign entity. As a *corpa ficta*, the Reclamation District can operate only as a "bankruptcy and insolvent entity under the mandate of current federal public policy of Public Law 73-1-, Chap. 48, 48 Stat 112-House Joint Resolution 192 of June 5, 1933 as amended." Complaint, pg. 5:9-12. Therefore, Debtor-Plaintiff asserts that there is a "real property confiscation attempt under such commercial disability" to deprive the Debtor-Plaintiff and his

5

...

family of their "free and unencumbered right to use" the Lee Road Property. Complaint, pg. 5:13-14. The Complaint continues to allege that the medium of exchange used by the Sutter County Tax Collector has not been shown to be valid, and that only gold or silver is valid tender, and not the tax certificate issued by the County. Complaint, pg. 6:24-26, 7:1-4.

The Complaint then alleges that based on Joint Resolution 192 of Congress, the gold standard has been suspended, and such act deprives persons from extinguishing their debts. Therefore, the Reclamation District cannot be a creditor entitled to the Lee Road Property. Any alleged obligation owing the Reclamation District is illegal and the Reclamation District is prohibited, as a matter of law, from even appearing in this Adversary Proceeding. Complaint, pg. 8:1-5. The Complaint continues with asserting additional contentions that economic obligations have been rendered illegal, and are thereby unenforceable.

## DISCUSSION

A temporary restraining order is an extraordinary remedy. *Gunn v. University Comm. to End the War in Vietnam*, 399 U.S. 383, 389 (1970). It is designed to preserve the *status quo* until the court has an opportunity to rule on an application for a preliminary injunction. *U.S. v. United Mine Workers*, 330 U.S. 258, 293 (1947); see also JAMES WM. MOORE, FEDERAL PRACTICE § 65.30 (3d ed. 2010). The court may issue the order with or without notice to the adverse party. Fed. R. Civ. P. 65(b) *incorporated by* Fed. R. Bankr. P. 7065. Applications for temporary restraining orders are also governed by Local Bankruptcy Rule 7065-1.

///

6

## I. Procedural Defects

Local Bankruptcy Rule 7065-1(b) provides that "no hearing on a temporary restraining order will be set" unless the Defendants files with the clerk and serves on the affected parties an application for a temporary restraining order, a brief on all relevant legal issues presented in the application, a declaration supporting the existence of an irreparable injury, a declaration detailing notice or efforts to effect notice to the affected parties, and a proof of service. Local Bankr. R. 7065-1(b)(1)-(6). Service on the affected parties may be waived if impossible under the circumstances, Local Bankr. R. 7065-1(b), though in those cases the moving party must comply with Federal Rule of Civil Procedure 65(b), Local Bankruptcy Rule 7065-1(a).

The docket in this adversary proceeding does not reflect compliance with the foregoing requirements as the Debtor-Plaintiff has not filed a declaration supporting the existence of an irreparable injury or a declaration detailing notice or efforts to effect notice to the affected parties.

Though the declaration in support states that the Debtor-Plaintiff will suffer "a severe hardship" if the temporary restraining order is not issued, this in not necessarily an irreparable injury. Dispossessing the Debtor-Plaintiff of the property, while a hardship, does not cause irreparable harm in this case because the Debtor-Plaintiff's interest is a leasehold, not a fee interest. Secondly, as the notices to vacate explain, Debtor-Plaintiff may later claim his personal property that remains in the home within fifteen days, thought the Debtor-Plaintiff will incur storage fees payable to the owner. *See* Cal. Civ. Code §§ 1986-1987.

Local Bankruptcy Rule 7065-1(a) also requires that "[a]ny party seeking a temporary restraining order in the absence of notice to the affected parties and/or counsel shall comply with the requirements of Fed. R. Civ. P. 65(b)." Pursuant to Federal Rule of Civil Procedure 65(b), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7065,

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if . . . (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons supporting the claim that notice should not be required.

Fed. R. Civ. Proc. 65(b). The Debtor-Plaintiff's declaration fails to describe his efforts to serve the application on the affected parties or describe the good cause why the court should waive this requirement.

As the Debtor-Plaintiff has failed to comply with the procedural requirements for the issuance of a temporary restraining order, the application is denied.

## II. The Merits of the Application

Alternatively, Debtor-Plaintiff has not satisfied the standard for obtaining a temporary restraining order. The standard for issuing a temporary restraining order is similar to that required for a preliminary injunction. *See Los Angeles Unified Sch. Dist. v. United States Dist. Court*, 650 F.2d 1004, 1008 (9th Cir. 1981). The Ninth Circuit sets forth the following standard for determining whether a court should grant an injunction:

> [Movant must] demonstrate either a combination of probability of success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in [its] favor. These formulations are not different tests but represent two points on a sliding scale in which the

     degree of irreparable harm increases as the probability of success on the merits decreases.

*Associated General Contractors of California, Inc. v. Coalition for Economic Equality*, 950 F.2d 1401, 1410 (9th Cir. 1991)(quotations and internal citations omitted).

    Debtor-Plaintiff has failed to show the possibility of success on the merits in this adversary proceeding. Most of the causes of action appear to be ill-advised attempts to argue that the Reclamation District does not legally exist, that the deed used by the Reclamation District was somehow an attempt by the State of California to unlawfully issue currency, notes issued by the Federal Reserve Bank are not lawful currency of the United States. It is hard to imagine that Debtor-Plaintiff will succeed in proving these claims. Equally challenging for the Debtor-Plaintiff is the claim that Congress — through an act relating to currency — rendered the Reclamation District "bankrupt and insolvent," that the Reclamation District took title through fraud, or that the Reclamation District engaged in unfair trade practices.

    From the Complaint and pleadings filed seeking the injunctive relief, the Debtor-Plaintiff's contentions appear to be completely without merit. First, though asserting that he has a lease option, the written agreement upon which the Debtor-Plaintiff asserts he has rights in the property clearing states that it is a lease. There are no purchase option provisions in the agreement. Given the Debtor-Plaintiff's sophistication in the arguments and claims advanced, the court questions whether such a "misstatement" by Debtor-Plaintiff was mere inadvertence or a deliberate misstatement. Further, the Complaint admits that shortly after

entering into the Lease, the Debtor-Plaintiff learned that the Reclamation District asserted the right to the Lee Road Property. Other than stating that the Debtor-Plaintiff offered to pay the $1,400 Lease rental to the Reclamation District, no mention is made of how the Debtor-Plaintiff asserted his rights, if any, in the state court proceeding.

The Debtor-Plaintiff's statements under penalty of perjury in the Schedules are inconsistent with the contentions in the Complaint and present motion. On Schedule A filed by the Debtor-Plaintiff, he states that he jointly owns the Lee Road Property with his wife (who did not file bankruptcy). He does not merely assert a leasehold interest or option right. On Schedule D, he lists the Reclamation District as having a disputed $654,000.00 claim secured by the Lee Road Property. On his Statement of Financial affairs, the Debtor-Plaintiff states under penalty of perjury that he (1) had no income from employment or operation of business during 2010, 2009, or 2008; (2) had no income other than from employment or business during 2010, 2009, or 2008; (3) made no payments to creditors within the 90 day period prior to filing bankruptcy, (4) was not involved in any lawsuits during the one year prior to filing the bankruptcy case; (5) made no gifts aggregating in excess of $200 to any person in the one year prior to the commencement of the bankruptcy case; (6) had no prior addresses during the three year period prior to the commencement of the bankruptcy case (notwithstanding the Debtor-Plaintiff not leasing the Lee Road Property just six month prior to the commencement of the bankruptcy case); and (7) has no spouse or former spouse during the eight years prior to the commencement of

the bankruptcy case. The Debtor-Plaintiff's completion of the Statement of Financial Affairs consisted of merely checking the boxes for no information to each question. Dckt. 1, Case No. 10-48581. One glaring inconsistency is that in his declaration in seeking relief in this Adversary Proceeding the Debtor-Plaintiff states under penalty of perjury that he and his wife have been residing in the Lee Road Property. He identifies his wife as Yolanda Stokes.

In addition to there being no lease purchase and the Debtor-Plaintiff stating on Schedule A that he owns the Lee Road Property, he states under penalty of perjury that he and his wife are in lawful possession of the property pursuant to a lease agreement "with the former owner" Norris Dawson. The Lease agreement referenced is not with a Norris Dawson, but an entity identified as KTLA-SP24, LLC. Mr. Dawson does not appear anywhere on the agreement. The person executing the lease for KTLA-SP24, LLC is identified as Erick Spellington, Property Manager.

In addition to misstating the entity purportedly leasing the property, the Debtor-Plaintiff states that the agreement is with a "former owner." This statement appears to admit that whomever the Debtor-Plaintiff believes that he leased the property, that person/entity no longer owns the property.

Considering the claims asserted by the Debtor-Plaintiff, the court cannot find that there is any likelihood of the Debtor-Plaintiff prevailing. These contentions border on being absolutely without merit. The main theme of the Debtor-Plaintiff's arguments are that all debts in the United States have been rendered

unenforceable because the United States is not on a gold or silver currency standard. Complaint, pg. 8:5-18.

Additionally, Debtor-Plaintiff has again not shown irreparable injury. As discussed above, Debtor-Plaintiff asserts a leasehold interest from some alleged former owner of the Lee Road Property, not an interest in fee. While the eviction proceedings create a burden on Debtor-Plaintiff, the burden is not an irreparable injury. Assuming that Debtor-Plaintiff succeeds in this suit, there is an adequate remedy at law: money damages for the costs incurred in moving, the difference in rent for an alternative residence, and other costs.

Further, there is no evidence presented to the court that the Debtor-Plaintiff has the ability to provide the security which the court would require pursuant to Federal Rule of Civil Procedure 65(d). Though the Federal Rules of Bankruptcy Procedure do not require a debtor to provide security for the issuance of a temporary restraining order, see Fed. R. Bankr. P. 7065, the court may require the posting of a bond. *Lyondell Chem. Co. v. CenterPoint Energy Gas Servs. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 595 (Bankr. S.D.N.Y. 2009). Given the marginal chances of success on the merits, were the court to grant the application it would require Debtor-Plaintiff post security to protect the interests of the Reclamation District.

As Debtor-Plaintiff has not shown that he will likely succeed on the merits of this adversary proceeding, that he will suffer irreparable harm during the pendency of the adversary proceeding, or that he could post any security required by the court, the application for a temporary restraining order is denied.

**III. Enforceability of the Relief from Stay Order**

To the extent the application seeks to modify the enforceability of the court's order granting relief from the automatic stay entered in the parent bankruptcy case, it is denied. The stay of an order issued by this court is a procedural issue, and is therefore governed by federal law. *See, e.g., Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Hanna v. Plumer*, 380 U.S. 460 (1965). Federal Rule of Bankruptcy Procedure 4001(a)(3) provides a fourteen-day stay of enforcement for an order granting relief from the automatic stay. That period expired on March 4, 2011. (*See* Order, No. 10-48581-E-7 Dckt. 53.) Any stay of enforcement to which the Debtor was entitled has already expired. Debtor-Plaintiff has made no showing or offered any legal basis for the modification of the court's relief from stay order. To the extent the application sought to modify that order, the application is denied.

## DECISION

The Debtor-Plaintiff has failed to comply with the procedural requirements for the issuance of a temporary restraining order or to meet the relevant legal standard. The application for the extraordinary relief of a temporary restraining order is denied. As the Debtor-Plaintiff has not shown any legal basis for a modification of the court's order granting relief from the automatic stay in the parent bankruptcy case, to the extent the application sought such relief, it is denied.

Dated: March 24, 2011

RONALD H. SARGIS, Judge
United States Bankruptcy Court

This document does not constitute a certificate of service. The parties listed below will be served a separate copy of the attached document(s).

---

William Stokes
PO Box 185
Nicolaus, CA 95659

J. Hopper
PO Box 73826
Davis, CA 95617

Brant J. Bordsen
1129 D Street
P.O. Box A
Marysville, CA 95901

Lawrence Loheit
PO Box 1858
Sacramento, CA 95812-1858

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814